JUDGE CROTTY                    07 CV 6349

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JAYSON REYES

                                        Plaintiff,      **COMPLAINT AND**
                                                               **JURY DEMAND**
              -against-

THE CITY OF NEW YORK, COMMISSIONER    Docket #
MARTIN F. HORN, NEW YORK CITY DEPARTMENT
OF CORRECTION, WARDEN FIDEL GONZALEZ,    ECF CASE
NORTHERN INFIRMARY COMMAND, WARDEN
LIONEL LORQUET, MANHATTAN DETENTION
COMPLEX, WARDEN FRANK SQUILLANTE, ERIC M.
TAYLOR CENTER, PRISON HEALTH SERVICES,
INC., PRISON HEALTH SERVICES, INC., MEDICAL
DIRECTOR TREVOR PARKS, PRISON HEALTH
SERVICES, INC., PROGRAM DIRECTOR REBECCA
PINNEY, DEPARTMENT OF HEALTH AND MENTAL
HYGIENE DEPUTY COMMISIONER JAMES
CAPOZIELLO, DEPARTMENT OF HEALTH AND
MENTAL HYGIENE MEDICAL DIRECTOR DOCTOR
BENJAMIN OKONTA, JOHN DOE CAPTAIN Shield #
570, JOHN DOE CORRECTION OFFICER Shield #
12574, JOHN DOE ##1-15

                                        Defendants.

------------------------------------------------------------- x

## PRELIMINARY STATEMENT

    1.    This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 USC §§1983, 1988 and the Fourth, Eighth and Fourteenth Amendments and the laws and Constitution of the State of New York.

    2.    The claim arises between February and June 2006 when prison officials and medical personnel, acting under color of state law, intentionally and willfully subjected plaintiff to, inter

alia, deprivation of his rights to due process, and cruel and unusual punishment by repeatedly failing to provide prescribed medical equipment, treatment and medication for plaintiff's serious medical needs.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331 and 42 USC §1983. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

7. Plaintiff is a citizen of the United States and at all times here relevant resided in New York County, City and State of New York. From February 10, 2006 to April 5, 2006, plaintiff was a pre-trial detainee being held at Manhattan Detention Center in New York, New York. He was sentenced on April 6, 2006. From April 12, 2006 until his release, he was at various facilities on Rikers' Island.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. New York Department of Correction Commissioner Martin Horn ("Horn") was at all

times here relevant the Commissioner of the New York City D.O.C., and, as such, was a policy maker with respect to training, supervision, and discipline of D.O.C. officers, including the other individual defendants. On information and belief, Commissioner Horn was responsible for the policy, practice, supervision, implementation, and conduct of all D.O.C. matters and was responsible for the appointment, training, supervision, and conduct of all D.O.C. personnel, including the defendants referenced herein. Commissioner Horn is also responsible for the care, custody, and control of all inmates housed in the D.O.C. jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of D.O.C., and for ensuring that D.O.C. personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

10. The City of New York gives the Department of Health and Mental Hygiene (DOHMH) the responsibility of providing medical care for prisoners. DOHMH has contracted with Prison Health Services Corporation (PHS) to satisfy that responsibility. Correctional Health Services is an agency under the control of DOHMH to oversee the services provided by PHS.

11. Deputy Commissioner Campoziello and Dr. Okonta were, at all times here relevant, employees of Correctional Health Services within DOHMH and, as such, were policy makers with respect to medical treatment as well as supervisors of direct medical care provided by PHS.

12. Medical Director Parks and Program Director Pinney were, at all times here relevant, employees of PHS and, as such, were policy makers with respect to medical treatment as well as supervisors of direct medical care provided.

13. Warden Fidel Gonzalez, at all times here relevant, was the Warden of the North Infirmary Command (NIC), and, as such, was a policy maker with respect to medical treatment, as well as supervisor of the facility's response to prisoner complaints. The Warden is sued in his

individual and official capacities.

14. Warden Lionel Lorquet, at all times here relevant, was the Warden of the Manhattan Detention Complex (MDC), and, as such, was a policy maker with respect to medical treatment, as well as supervisor of the facility's response to prisoner complaints. The Warden is sued in his individual and official capacities.

15. Warden Frank Squillante, at all times here relevant, was the Warden of the Eric M. Taylor Center (EMTC), and, as such, was a policy maker with respect to medical treatment, as well as supervisor of the facility's response to prisoner complaints. The Warden is sued in his individual and official capacities.

16. All other individual defendants ("the officers") are employees of the D.O.C., and are sued in their individual capacities.

17. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

18. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## JOINT LIABILITY

19. This action falls within one or more of the exceptions set forth in CPLR §1602.

## EXHAUSTION OF REMEDIES

20. Plaintiff filed a complaint with the Department of Correction Inmate Grievance Resolution Program. Plaintiff received a response that his complaint was non-grievable. Plaintiff complained of his ignored medical needs to medical and correctional staff. Since there is no other mechanism to redress plaintiff's injuries with the DOC now that he has been released, plaintiff has exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

21. In approximately 2002, plaintiff started suffering from a serious nerve disease known as reflex sympathetic distrophy (RSD) after an accident at work which left his left ankle crushed.

22. Plaintiff was detained in New York City Department of Correction custody from February to June 2006.

23. During his incarceration he repeatedly requested from correction officers, doctors, nurses, physicians' assistants, and other PHS and DOC staff, and was repeatedly denied, access to a medically necessary wheelchair, a brace, medication, and other required treatment.

24. During all of the events above described, defendants acted with deliberate indifference to plaintiff's serious medical needs and caused a wanton, unnecessary infliction of pain. The failure to provide prescribed treatment caused additional, constant and serious suffering for plaintiff.

25. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.    Violation of his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment;

5

b.  Violation of his right under the New York State Constitution Article 1 Section 5 to be free from cruel and unusual punishment;

c.  Violation of his Fourth Amendment and Fourteenth Amendment rights to due process under the United States Constitution;

d.  Violation of his right to due process under New York State Constitution Article 1 Section 6;

e.  Physical pain and suffering;

f.  Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, limited mobility, anxiety, financial loss, and property damage;

## FIRST CAUSE OF ACTION
(42 USC § 1983)

26. The above paragraphs are here incorporated by reference.

27. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from cruel and unusual punishment and to due process of law pursuant to the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §§1983 and sections five and twelve of the New York State Constitution.

28. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

29. The above paragraphs are here incorporated by reference.

30. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants and the others whose names are currently unknown.

31. The City knew or should have known of their employees', agents', or servants' propensity to engage in the wrongful acts detailed above.

32. The aforesaid event was not an isolated incident. The City and the Commissioners have been aware for some time (from newspaper articles, internal reviews, investigations, lawsuits, notices of claim and inmate complaints) that Prison Health Services continually has failed to perform under its contracts to provide adequate healthcare in the prisons and jails it services. The City and the Commissioners have insufficiently addressed or corrected Prison Health Services for inadequately performing under its contract and have renewed its contract with the City despite P.H.S.'s failure to meet reasonable standards of care in the medical community. The City and the Commissioners are aware that all of the aforementioned has resulted in violations of citizens' constitutional rights and medical malpractice. Despite such notice, the City and Commissioners have failed to take corrective action. This failure and these policies caused the violations of plaintiff's civil and constitutional rights, without fear of reprisal or loss of contract renewal.

33. The City, Warden Gonzalez, Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney knew or should have known that the personnel who caused plaintiff injury had a propensity for the type of conduct that took place in this case. Nevertheless, the City, Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney failed to take corrective action.

34. The City, Warden Gonzalez, Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

35. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of New York City, Warden Gonzalez, Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiff's rights here alleged.

36. Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney had actual and constructive knowledge of the constitutional deprivation but demonstrated deliberate indifference by failing to act. Deputy Commissioner Capoziello, Medical Director Dr. Okonta, Medical Director Parks, and Program Director Pinney damaged plaintiff by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases involving deliberate indifference to serious medical needs of prisoners.

37. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the City, Warden Gonzalez, Deputy Commissioner Capoziello, Medical Director Okonta, Medical Director Parks, and Program Director Pinney.

### THIRD CAUSE OF ACTION
(DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS)

38. The above paragraphs are here incorporated by reference.

39. Defendants have acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to due process of law pursuant to the Fourth, Eighth and Fourteenth Amendment of the United States Constitution and are liable to plaintiff under 42 USC §1983 and the New York State Constitution.

40. Defendants knew plaintiff faced a substantial risk of serious harm and disregarded that

risk by failing to take reasonable steps to abate it.

41. Defendants repeatedly failed to provide proper medical attention to plaintiff's serious medical needs that they were repeatedly made aware of.

42. The substantial risk of harm resulting from defendants' deliberate indifference caused plaintiff to sustain serious injuries.

43. Plaintiff was damaged by the deliberate indifference of the defendants.

44. Plaintiff was damaged by defendant's battery.

## FOURTH CAUSE OF ACTION
(MEDICAL MALPRACTICE)

45. The preceding paragraphs are here incorporated by reference.

46. The defendant doctors, physicians' assistants, nurses, pharmacists, and other medical and pharmaceutical staff of Prison Health Services owed plaintiff a duty of care to provide him with medically necessary equipment, treatment, and evaluations in accordance with the accepted standards of care in the community and to use in their evaluation and care of plaintiff approved methods in general use, to use reasonable care and skill, and to use their best judgment in the evaluation and care of plaintiff to determine whether he required the equipment, treatment and medications and to promptly provide him with such if found to be required.

47. The defendant doctors, physicians' assistants, nurses, pharmacists, and other medical staff breached that duty in negligently and carelessly neglecting to heed the plaintiff's condition and his repeated requests, in negligently departing from accepted practices in failing to respond to patients' documented needs and in failing to follow good practice by causing him to go without equipment, treatment, and medications that were necessary for plaintiff to maintain good health and, thereby, defendants failed to properly evaluate and care for plaintiff.

48. The actions and omissions of these defendant doctors, physicians' assistants, nurses,

pharmacists, and other medical and pharmaceutical staff caused plaintiff to suffer physical and emotional injury.

## FIFTH CAUSE OF ACTION
(NEGLIGENCE)

49. All preceding paragraphs are here incorporated by reference.

50. Defendants had a duty to plaintiff to use reasonable care in promptly assessing and providing his medical needs.

51. Defendants repeatedly breached that duty by failing to properly assess, prescribe, renew, and provide his medically necessary equipment, treatment and medications over the period of several months.

52. Defendants' failure to use reasonable care in assessing and providing plaintiff's medications actually and proximately caused plaintiff serious physical injury.

53. Plaintiff was seriously injured as a result of defendants' negligence.

## SIXTH CAUSE OF ACTION
(CONTEMPT)

54. The above paragraphs are here incorporated by reference.

55. On August 20, 1990, defendants entered into a stipulation of settlement in <u>Eric Vega, et al. v. Allyn Sielaff, et al</u>, 82 Civ. 6475. This Stipulation and Order lays out specific requirements for medical care in the now nonexistent North Infirmary Building or any replacement facility. NIC replaced the North Infirmary Building and therefore the Stipulation and Order referenced above applies.

56. The Stipulation and Order requires defendants to maintain medically appropriate facilities in NIC that are adequately equipped, maintained and staffed with qualified personnel

who will address the medical needs of the plaintiffs in a timely and medically appropriate manner. (See Paragraph 2, Stipulation and Order, 85 Civ. 6475).

57. The Stipulation and Order also requires defendants to promptly respond to individual patient's inquiries or complaints concerning medical care. (See Paragraph I.4, Stipulation and Order, 85 Civ. 6475).

58. Defendants have violated both of these court orders by failing to provide ordered care for eight months and failing to timely respond to plaintiff's complaints while he was incarcerated in NIC.

59. Plaintiff has been damaged as a result of defendants' contempt and is entitled to compensation.

### SEVENTH CAUSE OF ACTION
### (CONSTITUTIONAL TORT)

60. All preceding paragraphs are here incorporated by reference.

61. Defendants, acting under color of law, violated plaintiff's rights pursuant to §§5, 6 and 12 of the New York State Constitution.

62. A damages remedy here is necessary to effectuate the purposes of §§5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

### EIGHTH CAUSE OF ACTION
### (NEGLIGENT HIRING & RETENTION – as to D.O.C. and Correction Officers)

63. The above paragraphs are here incorporated by reference.

64. Defendant officers had a negligent disposition and the D.O.C. knew or should have known of facts that would have led reasonable and prudent people to further investigate the defendant officers' negligent dispositions through the hiring process.

65. Defendants City and D.O.C. knew or should have known that their failure to investigate defendant officers' negligent dispositions would lead to plaintiff's injury.

66. Defendants City and D.O.C. were negligent in their hiring and retaining the officers involved in this case in that they knew or should have known of the officers' propensity to act negligently.

67. Defendants City and D.O.C. have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under common law, 42 USC §1983 and the New York State Constitution.

### NINTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION – as to P.H.S. and its medical staff)

68. The above paragraphs are here incorporated by reference.

69. Defendants medical staff had a negligent disposition and P.H.S. knew or should have known of facts that would have led reasonable and prudent people to further investigate the defendant medical staff's negligent dispositions through the hiring process.

70. Defendant P.H.S. knew or should have known that their failure to investigate defendant medical staff's negligent dispositions would lead to plaintiff's injury.

71. Defendant P.H.S. were negligent in their hiring and retaining the medical staff involved in this case in that they knew or should have known of the medical staff's propensity to act negligently.

72. Defendant P.H.S. has deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, 42 USC §1983 and the New York State Constitution.

## TENTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION – as to City of New York, DOHMH, and PHS)

73. The above paragraphs are here incorporated by reference.

74. Defendant P.H.S. had a record of negligence and P.H.S. knew or should have known of facts that would have led reasonable and prudent people to further investigate the defendant P.H.S.'s record of negligence through the contracting process.

75. Defendant D.O.H.M.H. knew or should have known that its failure to investigate defendant P.H.S.'s negligent record would lead to plaintiff's injury.

76. Defendant D.O.H.M.H. was negligent in its contracting and retaining the P.H.S. defendant involved in this case in that it knew or should have known of the corporation's propensity to act negligently.

77. Defendant D.O.H.M.H. has deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, 42 USC §1983 and the New York State Constitution.

## ELEVENTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR – as to City of New York and DOC Correction Officers)

78. The above paragraphs are here incorporated by reference.

79. Defendant officers' intentional and negligent tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

80. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiff was damaged.

## TWELFTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR – as to City of New York and P.H.S.)

81. The above paragraphs are here incorporated by reference.

82. Defendant P.H.S.'s intentional and negligent tortious acts were undertaken within the scope of its contract by defendant City of New York and D.O.H.M.H. and in furtherance of the defendant City of New York's and D.O.H.M.H.'s interest.

83. As a result of defendant P.H.S.'s tortious conduct in the course of its contract and in furtherance of the business of defendant City of New York and D.O.H.M.H., plaintiff was damaged.

## THIRTEENTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR – as to P.H.S. and its staff)

84. Defendant medical staff's intentional and negligent tortious acts were undertaken within the scope of its contract by defendant P.H.S. and in furtherance of the defendant P.H.S.'s interest.

85. As a result of defendant medical staff's tortious conduct in the course of their employment and in furtherance of the business of defendant P.H.S., plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:    Brooklyn, New York
July 11, 2007

TO:    New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Department of Correction Commissioner
Martin Horn
60 Hudson Street
New York, NY 10013

Warden Fidel Gonzalez
North Infirmary Command
15-00 Hazen Street
East Elmhurst, NY 11370

Prison Health Services Corporation
125 White Street
New York, NY 10013

Michael Catalano, CEO
Prison Health Services, Inc.
105 Westpark Dr. Suite 200
Brentwood TN 37027

Medical Director Trevor Parks
Prison Health Services Corporation
125 White Street
New York, NY 10013

Program Director Rebecca Pinney
Prison Health Services Corporation
125 White Street
New York, NY 10013

Yours, etc.,

Leo Glickman, Esq.
Bar #LG3644
Attorney for Plaintiff
71 Nevins Street
Brooklyn, NY 11217
(718) 852-3710
lglickman@stollglickman.com

Deputy Commissioner James Capoziello
New York City Correctional Health Services
225 Broadway 23rd Fl
New York, NY  10007

Medical Director Dr. Benjamin Okonta
New York City Correctional Health Services
225 Broadway 23rd Fl
New York, NY  10007